# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ARCHDIOCESE OF ST. LOUIS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 4:12-CV-00924-JAR |
| | ) |
| KATHLEEN SEBELIUS, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss. [ECF No. 16] The motion is fully briefed and ready for disposition. With leave of Court, the American Center for Law & Justice and Seventy-Nine Members of the United States Congress have filed an amici curiae brief in support of Plaintiffs regarding their opposition to Defendants' motion to dismiss. (Doc. No. 25) Plaintiffs (Doc. No. 34) and Defendants (Doc. Nos. 30, 31, 32, 36, 38, 39, 40) have filed Notices of Supplemental Authority related to the pending motion to dismiss. For the following reasons, the motion will be granted.

**Background**

This action is one of many cases filed throughout the United States raising constitutional challenges to the Patient Protection and Affordable Care Act ("ACA").[1] The relevant statutory and regulatory background of the ACA has been set out in detail in several recent opinions. See, e.g.,

---

[1] Patient Protection and Affordable Care Act, Pub.L. No. 111–148, 124 Stat. 119 (Mar. 23, 2010), as amended by the Health Care and Education Reconciliation Act of 2010, Pub.L. No. 111–152, 124 Stat. 1029 (Mar. 30, 2010).

Colorado Christian University v. Sebelius, No. 1:11-cv-03350-CMA-BNB, 2013 WL 93188, at *1-3 (D. Colo. January 7, 2013); Catholic Diocese of Biloxi v. Sebelius, No. 1:12-cv-00158-HSO-RHW, 2012 WL 6831407, at *3-5 (S.D. Miss. Dec. 20, 2012).

In summary, the ACA and implementing regulations require all group health plans to provide women with "preventive care and screenings" at no charge to the patient ("Women's Health Amendment"). See 42 U.S.C. § 300gg-13(a). The scope of "preventive care" is defined to include all "contraceptive methods," "sterilization procedures, and patient education and counseling for women with reproductive capacity," that are approved by the FDA. See Wheaton College v. Sebelius, 2012 WL 3637162, at *2 (D.D.C. Aug. 24, 2012) (citing Women's Preventive Services: Required Health Plan Coverage Guidelines, http://www.hrsa.gov/womensguidelines (last visited August 24, 2012)). The preventive care coverage requirement does not apply to grandfathered[2] health plans, and certain "religious employers"[3] are exempt from any requirement to provide coverage for contraceptive services.

---

[2]The preventive services coverage regulations do not apply to plans that existed on March 23, 2010 and that have not undergone any of a defined set of changes since that date. 26 C.F.R. § 54.9815-1251T; 29 C.F.R. § 2590.715-1251; 45 C.F.R. § 147.140.

[3]"Religious employers" are exempt from the requirement to provide coverage for contraceptive services provided they meet the following criteria:

- The inculcation of religious values is the purpose of the organization;
- The organization primarily employs persons who share the religious tenets of the organization;
- The organization primarily serves persons who share the religious tenets of the organization; and
- The organization is a nonprofit organization as described in section 6033(a)(1) and section 6033(a)(3)(A)(i) or (iii) of the Internal Revenue Code of 1986, as amended.

45 C.F.R. § 147.130(a)(1)(iv)(B).

Defendants have established a one-year enforcement "safe harbor" for certain non-profit employers with religious objections to covering contraceptive services. Id. (citing Group Health Plans and Health Insurance Issuers Relating to Coverage of Preventive Services Under the ACA, 77 Fed.Reg., 8,725, 8,725-8,729 (February 15, 2012)). During the safe harbor, which remains in effect until August 1, 2013, Defendants will not take any enforcement action against any employer or group health care plan with respect to a non-grandfathered plan that fails to cover some or all of the recommended contraceptive services.

In March 2012, Defendants published an Advance Notice of Proposed Rulemaking ("ANPRM") announcing their intention to propose amendments that "would establish alternative ways to fulfill the requirements of the ACA while still protecting religious organizations from having to contract, arrange, or pay for contraceptive services." 77 Fed.Reg. 16,501, 16,503 (March 21, 2012). The ANPRM further states Defendants' intention to finalize these amendments so that they are effective by the end of the temporary enforcement safe harbor. Id. at 16,503.

Plaintiffs, the Archdiocese of St. Louis ("Archdiocese") and Catholic Charities of St. Louis ("Catholic Charities"), describe themselves as "Catholic religious entities that provide a wide range of spiritual, educational, and social services to residents in the greater St. Louis community." (Compl., Doc. No. 1, ¶ 2)

Defendants are the U. S. Department of Health and Human Services ("HHS"), Kathleen Sebelius in her official capacity as Secretary of HHS, the U.S. Department of Labor, Hilda Solis in her capacity as Secretary of the U.S. Department of Labor, the U.S. Department of Treasury, and Timothy Geithner in his official capacity as Secretary of the Treasury. (Compl., ¶¶ 12-17) Collectively, Defendants are the departments and officials responsible for adopting, administering, and enforcing the regulations Plaintiffs are challenging.

3

Plaintiffs contend the regulations promulgated as part of the ACA would require many Catholic and other religious organizations to provide health plans to their employees that include and/or facilitate coverage for abortion-inducing drugs, sterilization, and contraception in violation of their sincerely held religious beliefs. (Id., ¶¶ 4-5)

The Archdiocese operates a self-insured health plan. That is, the Archdiocese does not contract with a separate insurance company that provides health care coverage to its employees. Instead, the Archdiocese functions as the insurance company underwriting its employees' medical costs. (Id., ¶ 25) Catholic Charities offers coverage through the Archdiocese's plan. (Id.) Consistent with Church teachings, the Archdiocese's plan does not cover abortion-inducing drugs, sterilization, or contraceptives. In limited circumstances, the plan administrator can override the exclusion of certain drugs commonly used as contraceptives if a physician certifies that they were prescribed with the intent of treating certain medical conditions, not with the intent to prevent pregnancy. (Id., ¶ 26)

Plaintiffs assert the Archdiocese's self-insured health plan does not meet the ACA's definition of a "grandfathered" plan because, since March 23, 2010, the Archdiocese has terminated one of its two plan options, replacing it with an option offering a reduced level of benefits at a reduced premium. (Id., ¶27) Further, the Archdiocese has not included and does not include a statement in plan materials provided to participants or beneficiaries informing them that it believes its plan is a grandfathered health plan within the meaning of section 1251 of the ACA. (Id.) See 26 C.F.R. § 54.9815-1251T(a)(2)(i).

Plaintiffs acknowledge that certain religious employers are exempted from the preventive services requirement; however, because they employ and serve persons without regard to religious

affiliation, Plaintiffs assert it is unclear whether they will in fact qualify as a "religious employer" under the exemption. (Complaint, ¶¶ 6-7, 38-39, 51)

Plaintiffs seek a declaratory judgment that the challenged regulations violate their rights under the First Amendment and the Religious Freedom Restoration Act ("RFRA")[4], and were promulgated in violation of the Administrative Procedure Act ("APA")[5]. Plaintiffs also seek an injunction prohibiting Defendants from enforcing the Mandate against them, and an order vacating the Mandate as to Plaintiffs.

Defendants move to dismiss the complaint for lack of subject matter jurisdiction under Rule 12 (b)(1), Fed.R.Civ.P., specifically on the issues of standing and ripeness.

**Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(1), a party is permitted to challenge a federal court's jurisdiction over the subject matter of the complaint. When the Court's subject matter jurisdiction is challenged, at issue is the Court's "very power to hear the case." Rundel v. Bob Evans Restaurant Inc., 2010 WL 597366, at *1 (E.D.Mo. Feb. 17, 2010) (quoting Osborn v. United States, 918 F.2d 724, 730 (8th Cir.1990)). The party invoking the jurisdiction of the federal court has the burden of establishing that the court has the requisite subject matter jurisdiction to grant the requested relief. Id. (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).

For an action to be dismissed under Rule 12(b)(1), the complaint must either be successfully challenged on the factual truthfulness of its assertions, or successfully challenged on its face. See Osborn, 918 F.2d at 729. The identification of whether a challenge is facial or factual is a necessary

---

[4] 42 U.S.C. § 2000bb et seq.

[5] 5 U.S.C. § 702

step, and this identification establishes how a court should proceed when resolving a motion to dismiss under Rule 12(b)(1). When subject matter jurisdiction is challenged based on the factual truthfulness of the assertions, a court is permitted to consider "matters outside the pleadings," such as testimony and affidavits. Id. at 729 n. 2 (citing Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir.1980)); see also Smith v. U.S. Postal Serv. Inspector Gen ., 2007 WL 537712, at *2 n. 3 (E.D.Ark. Feb. 16, 2007). When a court's subject matter jurisdiction is challenged in a facial attack, however, the Court "restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Kinder v. Geithner, 2011 WL 1576721, at *1 (E.D.Mo. April 26, 2011) (quoting Osborn, 918 F.2d at 729 n. 6)).

**Discussion**

**Subject Matter Jurisdiction**

"Federal jurisdiction is limited to the power authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." Kinder, 2011 WL 1576721, at *3 (citing Zanders v. Swanson, 573 F.3d 591, 593 (8th Cir.2009)). "The limitations imposed by Article III are usually referred to as the 'case or controversy' requirement." Zanders, 573 F.3d at 593 (quoting Schanou v. Lancaster County Sch. Dist. No. 160, 62 F.3d 1040, 1042 (8th Cir.1995)). A case or controversy requires a claim that is ripe and a plaintiff who has standing. The requirements of standing and ripeness often overlap; however, they require "distinct inquiries: 'Whereas ripeness is concerned with when an action may be brought, standing focuses on who may bring a ripe action.' " Indiana Right to Life, Inc. v. Shepard, 507 F.3d 545, 549 (7th Cir. 2007) (quoting Pic-A-State Pa., Inc. v. Reno, 76 F.3d 1294, 1298 n.1 (3d Cir. 1996)).

The Court notes that a number of courts have already addressed the jurisdictional arguments Defendants raise here. See Persico v. Sebelius, No. 1:12-cv-00123-SJM, 2013 WL 228200 (W.D. Pa. Jan. 22, 2013); Colorado Christian University v. Sebelius, No. 11-cv-3350-CMA-BNB, 2013 WL 93188; Catholic Diocese of Peoria v. Sebelius, No. 1:12-cv-01276-JES-BGC, 2013 WL 74240 (C.D. Ill. Jan. 4, 2013); University of Notre Dame v. Sebelius, No. 3:12-cv-0523-RLM, 2012 WL 6756332 (N.D. Ind. Dec. 31, 2012); Catholic Diocese of Biloxi v. Sebelius, 2012 WL 6831407; Wheaton College v. Sebelius, Nos. 12-5273, 12-5291, ---F.3d---, 2012 WL 6652505 (D.C. Cir. Dec. 18, 2012) (Order holding consolidated cases Wheaton Coll. v. Sebelius, No. 12-1169ESH, --- F. Supp. 2d ----, 2012 WL 3637162 (D.D.C. Aug. 24, 2012) and Belmont Abbey College v. Sebelius, No. 11-1989JEB, --- F. Supp. 2d ---, 2012 WL 2914417 (D.D.C. July 18, 2012) in abeyance because "the cases are not fit for review at this time"); The Roman Catholic Archdiocese of New York v. Sebelius, 1:12-cv-2542-BMC, 2012 WL 6042864 (E.D. N.Y. Dec. 5, 2012); Zubik v. Sebelius, No. 2:12-cv-00676, ---F.Supp.2d---, 2012 WL 5932977 (W.D. Pa. Nov. 27, 2012); Catholic Diocese of Nashville v. Sebelius, No. 3-12-0934, 2012 WL 5879796 (M.D. Tenn. Nov. 21, 2012); Legatus v. Sebelius, No. 12-12061, --- F. Supp. 2d ---, 2012 WL 5359630 (E.D. Mich. Oct. 31, 2012); Nebraska v. U.S. Dep't of Health & Human Servs., 877 F.Supp. 2d 777 (D. Neb. 2012). With the exception of the court in the Roman Catholic Archdiocese of New York case, 2012 WL 6042864, at *23, the district courts decided they lacked jurisdiction over the nonprofit religious

organizations before them based on standing and/or ripeness grounds.[6] While none of these rulings are binding on this Court, the Court finds them persuasive.

Because ripeness "provides a slightly more narrow ground for dismissal than standing," the Court addresses Defendants' ripeness challenge first. Colorado Christian University, 2013 WL 93188, at *3 (quoting Zubik, 2012 WL 5932977, at *7 n.12).

**Ripeness**

The ripeness doctrine is taken from both Article III jurisdictional limits and policy considerations of effective court administration. U.S. v. Rideout, 478 Fed.Appx. 339 (8th Cir. 2012) (unpublished). The doctrine's basic rationale is to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Kinder, 2011 WL 1576721, at *8. See also National Park Hospitality Association v. Department of Interior, 538 U.S. 803, 807 (2003). A claim is not ripe if the alleged injury "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." 281 Care Committee v. Arneson, 638 F.3d 621, 631 (8th Cir. 2011) (quoting KCCP Trust v. City of N. Kan. City, 432 F.3d 897, 899 (8th Cir. 2005)). In assessing ripeness, courts consider the fitness of the issues for judicial decision and the hardship to the parties of withholding a decision. Kinder, 2011 WL 1576721, at *8; KCCP Trust, 432 F.3d at 899. Considerations of hardship that might result from delaying review "rarely

---

[6]The district court in Archdiocese of New York found the plaintiffs' claims fit for judicial review based on its conclusion that the coverage mandate, having been formally promulgated in the Federal Register, is not merely a "non-final proposed policy," but rather a "final rule." 2012 WL 6042864, at *16. The position taken by the New York court appears to be the minority view, however, and numerous other federal courts have interpreted the prospect of the mandate's enforcement as a "mere contingency" in light of the Defendants' stated plan for further rulemaking as it relates to non-exempt religious organizations. Persico, 2013 WL 228200, at *13 (and cases cited therein).

overcome the finality and fitness problems inherent in attempts to review tentative positions." Nebraska, 877 F.Supp.2d at 801 (quoting American Petroleum Institute v. EPA, 683 F.3d 382, 389 (D.C.Cir. 2012).

Defendants argue Plaintiffs' challenge is not ripe because the preventive services coverage regulations are in the process of being amended, and therefore not final for purposes of ripeness. (Doc. No. 17, pp. 15, 17) This Court agrees. Because the regulations are in the process of being amended, in their current form they represent a tentative as opposed to final agency position. See, Persico, 2013 WL 228200, at *14 ("We, like the majority of other courts cited above, view the Defendants' promise to engage in further rulemaking as a good faith binding commitment which effectively renders the Mandate a 'non-final' agency action, at least insofar as it relates to religious organizations like the Plaintiffs."); Colorado Christian University, 2013 WL 93188, at *5; Catholic Diocese of Biloxi, 2012 WL 6831407, at *7; Catholic Diocese of Nashville, 2012 WL 5879796, at *5 ("Because the preventive services regulations are in the process of being amended, they are by definition a tentative agency position in which the agency expressly reserves the possibility that its opinion might change and, therefore, are not fit for judicial decision at this time."); University of Notre Dame, 2012 WL 6756332, at *3 ("Notre Dame is correct that regulation itself claims to be final, but events following the regulation's adoption make clear that it isn't final. The defendants have announced their intention to refashion the rule in an effort to address concerns such as those Notre Dame has raised and, by virtue of the safe harbor provision, have exempted Notre Dame from the rule for the time believed to be required for the re-fashioning."); Catholic Diocese of Peoria, 2013 WL 74240, at *5 ("[A]s the Government is in the process of amending the preventive service regulations, those regulations are not fit for judicial review at this time. To do so would undermine

the interests of judicial economy requiring the Court to review the Rule before it is amended and before it is to be enforced").

Moreover, the forthcoming amendments are intended to address the exact issue Plaintiffs raise here by establishing alternative means of providing contraceptive coverage without cost-sharing while accommodating religious organizations' religious objections to covering contraceptive services. (Id.) Defendants also point out that Plaintiffs will have opportunities to participate in the rulemaking process and provide comments and/or ideas about the proposed accommodations. (Id.) Thus, there is a significant chance that the amendments will alleviate the need for judicial review. Id. (citing KCCP Trust, 432 F.3d at 899 ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (quoting Texas v. United States, 523 U.S. 296, 300 (1998)). In the meantime, Plaintiffs are protected from enforcement by the safe harbor.

Defendants further argue that Plaintiffs' allegations of harm to their planning for upcoming health plan years, budgeting process and employee recruitment and retention efforts do not constitute a hardship. (Id., p. 18) Faced with substantially similar allegations, the district courts in Persico, Colorado Christian University, Belmont Abbey, Wheaton College, and Nebraska concluded that present planning for future contingencies did not establish hardship from delayed review. See, Persico, 2013 WL 228200, at *15 ("Mere economic uncertainty affecting the plaintiff's planning is not sufficient to support pre-mature review."); Colorado Christian University, 2013 WL 93188, at *8 ("Plaintiffs' planning results from its ongoing speculation that Defendants will fail to amend the interim final rule in a satisfactory manner. However, such speculation, regardless of the costs it entails, is insufficient to constitute a hardship that would outweigh the

Court's determination on the fitness of the issues presented, especially because Defendants' stated intent is to amend the interim final rule so as to accommodate the concerns CCU raises here."); Belmont Abbey College, 2012 WL 2914417, at *14 ("Costs stemming from Plaintiff's desire to prepare for contingencies are not sufficient ... to constitute a hardship for purposes of the ripeness inquiry—particularly when [defendants'] promises and actions suggest the situation Plaintiff fears may not occur." ); Wheaton College, 2012 WL 3637162, at *8 ( "The planning insecurity [Wheaton] advances" with regard to what the preventive services regulations may (or may not) require of it does not suffice to show hardship.); Nebraska, 877 F.Supp.2d 777, 802 (D.Neb. 2012) ("The plaintiffs argue that delaying judicial review would harm them because they must either 'make immediate and significant changes to their health care coverage arrangements in contravention of their religious and moral beliefs' or 'forgo health insurance altogether and face a steep civil penalty in doing so.' In fact, however, this forced choice is neither imminent nor inevitable in light of the temporary enforcement safe harbor and the ANPRM.")

Because the preventive services coverage regulations are currently undergoing a process of amendment to accommodate Plaintiffs' religious objections, and because Plaintiffs are protected from enforcement by the safe harbor, the Court concludes that Plaintiffs' claims are not ripe for judicial review.

**Standing**

To have standing, a plaintiff must demonstrate that it has "suffered an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not 'conjectural or hypothetical.' " Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (quotations omitted). Allegations of possible future injury do not satisfy the requirements of

Article III; rather, "[a] threatened injury must be certainly impending to constitute injury in fact." Whitmore v. Arkansas, 495 U.S. 149, 158 (1990) (quotations omitted). Moreover, "[i]t is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record. And it is the burden of the party who seeks the exercise of jurisdiction in his favor clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute. Thus [Plaintiffs] in this case must allege facts essential to show jurisdiction. If they fail to make the necessary allegations, they have no standing." Kinder, 2011 WL 1576721, at *3-4 (quoting FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231 (1990)).

Defendants argue Plaintiffs lack standing because they have not alleged any imminent injury. (Doc. No. 17, p. 10) In fact, Plaintiffs concede they do not face an impending government enforcement action. (Compl., ¶ 89) ("Plaintiffs have until the start of the next plan year following August 1, 2013, to come into compliance with this law."). Defendants maintain that the absence of any imminent harm to Plaintiffs is further demonstrated by the ANPRM, whereby Defendants state their intention to finalize the amendments to the regulations to accommodate Plaintiffs' religious objections before the safe harbor expires on August 1, 2013. (Doc. No. 17, pp. 9-13)

Plaintiffs respond that the coverage mandate and its narrow definition of religious employer presents it with a "Hobson's choice" of either violating their religious beliefs or risking exposure to various penalties. (Doc. No. 26, p. 8) They contend these religious and economic issues are sufficiently concrete to satisfy Article III. (Id.) Plaintiffs further respond that the "present impact" of the mandate also establishes an injury in fact, in that they must now plan how they will respond to the mandate in terms of analyzing, vetting and implementing changes to their health plans and budgeting for any fines for disregarding the mandate in their 2013-14 budgets.

Having rejected a similar ripeness argument, the Court will reject Plaintiffs' standing argument as well. See Catholic Diocese of Nashville, 2012 WL 5879796, at *5. Plaintiffs' allegations of injury are based on speculation that the regulations will apply to Plaintiffs in their current form come August 2013. (Doc. No. 28, p.3) Yet Defendants have stated they will issue a new rule specifically to accommodate Plaintiffs' religious objections. Because Defendants are presumed to act in good faith, see, Colorado Christian University, 2013 WL 93188, at *5, the Court construes Defendants' representations as a binding commitment. Diocese of Peoria, 2013 WL 74240, at *5. "Because an amendment to the final rules that may vitiate the threatened injury is not only promised but underway, the injuries alleged by Plaintiff are not 'certainly impending.' " Belmont Abbey, 2012 WL 2914417, at *10. See also Catholic Diocese of Nashville, 2012 WL 5879796, at *5; Wheaton College, 2012 WL 3637162, at *8.

Furthermore, while Defendants are in the process of amending the preventive service regulations, the regulations are not being enforced against Plaintiffs. Other courts deciding this identical issue have found that organizations protected under the safe harbor do not have standing because their injury is speculative. See Zubik, 2012 WL 5932977, at *11 (court determined plaintiffs lacked standing because the safe harbor "render[s] the threatened harm from the preventive care regulations too remote to constitute 'imminent' injury," and that "any injury from enforcement of the [challenged] regulations after the safe harbor expires is purely speculative" in light of the forthcoming accommodation.); Belmont Abbey, 2012 WL 2914417, at *9 ("The alleged injury is . . . too speculative to confer standing given the government's clear intention to amend the regulations before the safe harbor lapses in order to accommodate organizations with religious objections to contraception."); Notre Dame, 2012 WL 6756332, at *3 (As a result of the safe

harbor, Notre Dame faces no penalty or restriction based on the existing regulatory requirement.); and <u>Legatus</u> 2012 WL 5359630, at *5 (court held a non-profit organization lacked standing to assert its claims because it qualified for the safe harbor). Given the existing safe harbor, there is no basis for the Court to consider the merits of Plaintiffs' complaint at this time.

**Conclusion**

This Court joins other district courts and the Court of Appeals for the District of Columbia in concluding that it lacks subject matter jurisdiction over the case currently pending. The challenged regulation is not sufficiently final for review to be ripe because Defendants have announced the regulation will be modified. Plaintiffs and other similarly situated organizations will have opportunities to participate in the rulemaking process and provide input about the proposed modifications. In addition, Defendants have provided Plaintiffs with a safe harbor that protects them from the regulation as it exists today. Plaintiffs also lack standing to challenge the present regulatory requirement because they are not subject to that requirement, and, based on the new proposed rulemaking that would amend the regulation, will never be subject to the present regulation. <u>University of Notre Dame</u>, 2012 WL 6756332, at *4. Defendants' motion will, therefore, be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [16] is **GRANTED**. A separate Order of Dismissal accompanies this Memorandum and Order.

Dated this 29th day of January, 2013.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

15